JAMES DEWITT FAY

*v.*

FRANCIS M. HERBERT et al.

[Argued December 29th, 1914.   Decided December 31st, 1914.]

On an accounting with respect to credits claimed by a defendant in a foreclosure suit, evidence *Held* to show that defendant was not entitled to the credits claimed by him.

---

On exceptions to master's report.

*Mr. William P. McMichael* and *Mr. Joseph S. Conover,* for the complainant.

*Mr. Halsted H. Wainright,* for the defendants.

BACKES, V. C.

A final decree by default, foreclosing two mortgages of the complainant, aggregating the sum of $3,871.11, on the same lot of the defendant Herbert, was entered, and under a writ of *fieri facias* to the sheriff of Monmouth county, the property was advertised for sale, when he petitioned the court to stay the sale, alleging that there was but $316.83 due to the complainant. An order was made referring the matter to a master to report if any credits should be made upon the execution, and the sale was stayed. The master has reported that the defendant is not entitled to any credits upon the complainant's decree, to which exceptions have been filed, some of which were abandoned on the hearing.

I will take them up in the order of the argument. The first relates to the complainant's mortgage of $1,420. The claim is that this was paid by the defendant issuing to the complainant fourteen shares, of the par value of $100 each, of the capital stock of the F. M. Herbert Company. Herbert ran a grocery store at Belmar. He was in financial distress, and the company was formed to take over his stock of groceries, for which $4,000 of capital stock was issued. Twenty-six shares were taken by Herbert and his wife, and fourteen shares by the complainant. It appears that the complainant had been, and nearly up to the time of the filing of the bill, financing Herbert and his company, and he was taken into the corporation to add to its credit. The complainant was a man of means and good standing in the community. Herbert, his wife, daughter and the lawyer who formed the company, gave testimony tending to show that the complainant agreed to surrender this mortgage in consideration of the stock. The complainant's insistence is that the stock was issued to him, and he gave credit for it to Herbert on an indebtedness which Herbert then owed. Herbert, at that time, according to the evidence, was heavily indebted to the complainant. The complainant kept a set of books of his financial deal-

ings with Herbert, and in the books he recorded the credit of the fourteen shares to the open account which was unsecured. The exceptant argues that by the great weight of testimony, his claim is made out. If the weight is to be measured by the number of witnesses, this may be conceded, but that, I take it, is not the guide. The circumstances are clearly against the exceptant's contention. It is hardly conceivable that the complainant agreed to surrender gilt-edged security for capital stock in a corporation which was of doubtful value, when at the same time the complainant was a heavy creditor of Herbert, and with little hope of collecting his debt. The facts that the complainant credited the item of stock on his books, which were regularly and carefully kept; that he did not cancel the mortgage, and that he brought foreclosure proceedings thereon, to which there was no protest until the property was about to be sold, weighs strongly against the likelihood that such a bargain was made. Their testimony was not satisfactory to the master, and upon a careful reading, does not convince me that the claim is made out. The master had the witnesses before him, and opportunity to observe them, the manner in which they gave their testimony, which, of course, is not at all reproduced in the cold type of the transcript sent up, and I see no reason for disturbing his view on this aspect of the case.

The remaining exceptions relate to credits claimed upon another mortgage known as the Arthur mortgage, which was assigned by Mrs. Arthur to the complainant, for $1,600. This mortgage was given to secure two notes, one of $1,000, the other of $1,826.88. The $1,000 note was paid off, and is not involved. At the time the complainant took an assignment, it appears by the endorsement on the $1,826.88 note that there was $1,594.33 due for principal. The complainant arranged to pay the mortgage in August of 1910, but it was not assigned to him until December following.

Fourteen checks made by the defendant, thirteen of which were made to the order of the complainant, and one to the order of "Seacoast" (meaning the Seacoast National Bank) for $57.30, were produced before the master. The defendant claims that the amounts of these checks were to be applied by the complainant on the Arthur mortgage. The check to the Seacoast

is not brought home to the complainant, except by the testimony of Herbert. The opinion I form from the testimony is that it is connected with payments made by Herbert on the note of $1,000.

The remaining checks, with the exception of one for $11, the complainant admits he received, but he states that they were in liquidation of the unsecured debt and in repayment of moneys which he was continually advancing to Herbert or his company during the period when these checks were given. And the complainant's books show that he gave credit to Herbert, or his company, on the open account. I am entirely in agreement with the view of the master that there was no application by Herbert of the sums of these checks towards the payment of the mortgage, and that the complainant did not receive them as payments. It would be strange indeed, incomprehensible, that the complainant should, during the period of these checks, lend his money to Herbert and his company without security, receiving in return moneys in discharge of his secured debt. He was, as the defendant's counsel says, Herbert's "financial angel," constantly advancing money, and the inference from the circumstances strongly supports the complainant's evidence that these various checks were in repayment of moneys which he had, or was, advancing.

The defendant sought to charge against the mortgage 14/40's of the rent of the store in which the F. M. Herbert Company was carrying on its business, and that fraction of Herbert's wages, at the rate of $18 per week. I disallowed them at the hearing, because if these amounts were owing to Herbert from anyone, the F. M. Herbert Company was the debtor.

An account for merchandise of $185.57, $19 of which was furnished after the corporation was formed, was also endeavored to be used as a credit. The evidence does not show any agreement on the part of the complainant to apply this amount in reduction of his mortgage. The complainant has not been furnished with a statement of the account, but agrees that if this sum is justly due, it ought to be, and he will apply it, in reduction of the unsecured debt—and there it belongs.

The exceptions will be overruled, and the stay heretofore granted will be discharged, with costs.